Next case is In re Skrkovich and Skrkovich. 06-15-58. When you're ready, Mr. Marshall. My name is John Marshall. I'd like to start immediately with the standard of review because I think it's the key to understanding this case. There's no quarrel about the standard of review being that the patent office is entitled to deference under the substantial evidence rule. What that means in application is that when the patent office considers the evidence of record and there are contrary conclusions that could be drawn from that evidence, that the patent office selection of one of those conclusions is not error, even though someone else might draw a contrary conclusion. But it is based upon consideration of the evidence of record and not selecting snippets from the evidence of record. And that's what this appeal is about. Mr. Marshall, these references are so close. You're dealing, you've got a method of treating psoriasis with an antibody to gamma interferon. And you start with the Queen patent, which points out that antibodies to interferon, gamma interferon, may be useful in autoimmune disease. Then you come to Ashkenazi, which mentions psoriasis, the exacerbation of psoriasis by gamma interferon. And then you come to Levinson, which seems to me is getting even closer, talking about helper T cells secreting gamma interferon. And it mentions psoriasis as being a possible application. Boy, this is awfully close. I've already hit all three of those and tell you why you should reverse. But I want to get first of all to the fact that you can reverse without violating the substantial evidence rule. I fully intend to hit all three of those. But the point I'm making is this. It's not a violation of the substantial evidence rule if on review of the record you find that what the patent office has done is taken a road map of the claim. In other words, the road map of the claim is that the antibodies can't work backwards. You have to work forward. Yes, because what you're doing in that instance is saying, here's the road map. Let me search in these references for the single phrase or the most favorable phrase to find that there's invalidity and stop at that as being the evidence of record. The proper way to do this is to look at it in the manner of a person of ordinary skill who understands the problem but not the solution. In that situation, you read each of these three references and you say, what does this teach someone of ordinary skill about an effective cure for psoriasis? Now, if we're going to go into those three references, let's talk about those three references. The first reference is Queen. What Queen is really about is creating humanized homoglobulins, some of which are antibodies to gamma interferon. In establishing what the utility of that is, Queen discusses that antibodies to gamma interferon have proven, in certain things, mice studies, graft rejections, to be an effective treatment. And it goes on, and this is the paragraph that the Patent Office ignores. After the paragraph that they select, after the sentence they select, the paragraph they ignore says that it may be, an antibody to gamma interferon may be effective for treating other autoimmune diseases. It is the example of a few, but not all, or even majority of autoimmune diseases. And then says that that is the end of the utility, but there is no determination. The phrases are that it's basically tentative. We think this is the utility. If you look at that from the point of view of the person of ordinary skill set, what does this say about an effective treatment for psoriasis? Now you've got a different question and a different answer. What it says is that Queen stands for the proposition that an antibody to gamma interferon may be effective for treating certain autoimmune diseases, not necessarily all. In other words, it's not a 102 reference. It is not a 102 reference. All right, but there are the others with which they were combined. The distance between Queen and getting to the one of the obviousness resolution is understanding what Queen really says, and that what it really says is that it's not necessarily a treatment for all autoimmune diseases. Certainly we've omitted a great many, and even the Patent Office omits, that one of the autoimmune diseases not referenced whatsoever in Queen is psoriasis. And they try to fill that gap with Ashkenazi, but what Ashkenazi is is another inventor who says, you know what, of all those different autoimmune diseases that might possibly or might not possibly be treated by an antibody to gamma interferon, inflammatory bowel disease is one that we are going to prove and have proved by our examples is treatable. But in background, they take great pains to tell you why it would not be obvious that an inflammatory bowel disease can be treated by an antibody to interferon. Contrasting that to several other diseases. Now what the Patent Office really seizes upon, I'll read it to you. Before you leave Ashkenazi, it does mention psoriasis. It absolutely does. It absolutely does. It mentions psoriasis in the manner of, these are things we've known about different diseases. And then it starts talking about its own disease that Ashkenazi is going to cure. And what he said is that the etiology of the causation factor of inflammatory bowel disease is unknown. Well, in the evidence of record, the causation of the etiology of psoriasis is equally unknown. It goes on to say that the nature of the initial insult in inflammatory bowel disease was unidentified. In the evidence of record, the initial insult causing psoriasis is unidentified. It says the only thing we have about initial bowel disease is that there is some evidence that hyperactivation of the mucosal immune system is involved because we see a disproportionate rise in certain of the proteins. But we can't make any conclusions from that. That is exactly the same kind of evidence of saying that there's some evidence or there's some notation that psoriasis and multiple sclerosis are exacerbated by using gamma interferon. It does not say that gamma interferon is the cause that an antibody to gamma interferon can cure. It certainly suggests using an antibody to gamma interferon if gamma interferon exacerbates it. It may suggest in the sense that are you on a trail the same as Ashkenazi was on a trail where he can say I don't have any real evidence or real confidence that this will work but I will try it and it worked. I think that's exactly right. You can say that. But saying that something might be a possible candidate without having confidence or something in the record to give you confidence to success means that you're in the position of the Skirkovich inventors. They don't know until they try. When they try they find out that with three patients within seven days an antibody to gamma interferon removes all of the surface lesions. They have proved it. That's not found in any of the others. The other one that you mentioned is Levinson. But what Levinson decided for is a thrilling. Levinson decided for the fact that there are different types of helper cells, the Th helper cells, the Th1 and the Th2 helper cells. Which secrete gamma interferon? Well, one of them, the Th1 cells, secrete gamma interferon along with other proteins that are secreted. The Th2 proteins that are secreted do not include gamma interferon and that proves that only one of the two types of cells secretes gamma interferon. There's nothing to tie that or to take that extra step beyond the limited teaching of Queen combined with Ashkenazi saying here's one more, inflammatory bowel disease is one more and say because of that we've now decided that all of the immune diseases can be treated that way. It simply does not say that. Getting to that point is pure hindsight. It's going to what the solution of the problem was and looking for the citations in those records that support that without looking at what else the record says. And when we cited the briefs, what else does the record say? In Levinson, Levinson does not even teach regulating gamma interferon release. Levinson is purely about regulating the Th helper cells. They talk about positive modulation, negative modulation of the helper cells as if those are the cause but never suggest that it's the protein secreted by it that might be the cause. So in looking back on it, what I'm saying is that if you look at these references for what they really teach, looking at the body of evidence that's in the record, then you're not bound by the Patent Office interpretation if it's clear that the Patent Office has done nothing more than simply take and cherry pick the most supportive portion that they can find in the reference for what they say it stands for and have neglected everything else. If that's what they've done, then you have not violated the standard of substantial evidence. What you have said, when you consider the evidence of record, it's not a substantial evidence question now. It is now a question of what some of the ordinary skill in the art would find as a matter of fact. Once you do that and you say this is what some of the ordinary skill in the art would find as a matter of fact, now you get to the de novo question of whether it would have been obvious to some of the ordinary skill that administering an effective quantity of an antibody to gamma interferon would cure psoriasis. That's disclosed and proven for the first time in a spiritualist reference and it's not obvious from what's in the prior work. And I would, I'd like some time here. Well, I have a question that doesn't go directly to your appeal issue. I'll wait until after your rebuttal and ask you because it's not something that the office needs to respond to. Mr. Walsh. Thank you, Your Honor. May it please the court. In considering the obviousness of an invention, we really have to think about whether the prior art as a whole suggests that it would have been desirable to do with the inventor's claiming. And then, if it looks like the prior art suggests it would have been desirable to do that, would there be a reasonable expectation that the suggestion would have worked? In this case, all of the references that the board and the examiner before the board had relied on give us an integrated picture really of how the use of anti-interferon gamma antibodies was appreciated in prior art before the applicant filed his application. Queen explains that it was already old. The concept of using an anti-interferon gamma antibody was already old for treating some conditions. Their invention really is an improved kind of antibody. So Queen is reliable here for giving us a picture of what those antibodies were good for. And among other things, it says that they can be used for treating autoimmune diseases, but as the panel has already reviewed, not specifically psoriasis. However, Ashkenazi and another reference, Novick, both explain that in psoriasis, interferon gamma is known to cause exacerbation of a condition. Novick, in fact, explains it even more clearly where Novick in the portion of the board cites explains interferon gamma exacerbates psoriasis and is therefore important for us to develop ways to inhibit the interferon gamma. You're saying it's obvious to try gamma interferon antibodies? Well, I think that's a question we do have to answer. Would it have been obvious to try? But that's not the test anymore, is it? That's right. Would it have been obvious to expect it to work? Not just to try, but would there have been a reasonable expectation of success? So turning to the next question, if we accept that in theory, this sounds like an honest theory, maybe it would be only something that's obvious to try. Would there be a reasonable expectation of success? As far as the fact finding goes, the facts that the board found were all supported by substantial evidence. One of the facts that they found was that Ashkenazi had gotten a patent for treating Crohn's disease, an autoimmune disease, with an antibody to interferon gamma, and that is expected to work. Levinson explains that Crohn's disease, like psoriasis, is in the same category of autoimmune diseases, the ones that are associated with Th1 cells that are known to produce the interferon gamma, the exacerbating factors. So that is another fact that supports the idea that the results obtained with the Crohn's disease would be reasonable to expect with psoriasis. The same factor is involved. The same factor can be treated with the antibody. It's reasonable to expect that it's going to work there, because it's the same factor that's being addressed by the therapy. So if there is an objection to the reasonable expectation of success based on Ashkenazi, it ought to be based on some evidence that there would be a problem in transferring Ashkenazi's teachings, or if there's a thought that Ashkenazi itself is not really enabled, and regardless of what Ashkenazi's claim says, they weren't really. treating Crohn's disease with the antibody. That's a question of evidence. We have an issued patent which is presumed enabled. It's presumed that the inventors understood what they were claiming. They wrote the claims. That was their idea of the invention. They were treating Crohn's disease with an anti-interferon gamma antibody. And if there's something wrong with that patent, it takes more than argument to establish it. There ought to be some way of showing on an evidentiary basis that there is a mistake in that patent. Let me ask you a question which might be inappropriate, but your opponent can comment if he wishes. Is there now a treatment for psoriasis with a material that inhibits gamma interferon? I don't know as a fact that there is. I think there are a number of antibody treatments, and I don't know which ones, if any, exactly. So I don't know the answer to the question. I'm sorry. Sure. But taking all of this evidence as a whole, the evidence is all integrated. It's all in the same area of treatments. I think it's beyond question that it would have been desirable to treat the disease, the motivation to treat the disease is so general and so assumed in every one of the references that there is motivation to treat. Is the motivation to treat psoriasis with this particular antibody, again, factually there's substantial evidence to support that because two references tell us that interferon gamma exacerbates the condition. One of the references says explicitly it's therefore important for us to develop a way to inhibit the interferon gamma and the antibodies in Ashkenazi and in Quina are presented as being inhibitors of the interferon gamma. So all those factual findings are supported with substantial evidence. The legal conclusion is almost inescapable because all of these references are so close. The differences between what's being claimed and what's in the prior art is very, very small. It comes almost down to being almost anticipation but not quite because no single reference says exactly the same words in that same formulation. What's the principal reference? Queen. If Queen had said there'd been a throwaway line and maybe other immune diseases such as psoriasis, would that be anticipation? The question I'm getting at is how that presumably question of whether that's enabled or not. It certainly is a direct suggestion, I suppose, at that point. But I don't suppose that would be sufficient for anticipation, would it, in your view? I mean, that's not the issue here, but I'm trying to get a sense of what it would take to trip that particular wire. I think I understand why that's an interesting question. It's almost like do we have to have the declarative form of the verb to anticipate? They said it may also. Or, put another way, they were running beyond their evidence and they simply said it will, but they had no basis for it. They just guessed, but they used the declarative form. In will or can be, I think ordinarily the office takes the position that would anticipate and then tries to argue out the proposition to explore whether the issue is really right or not. That's why the applicant would have a chance to come back. But the applicant could come back and say, well, that was their speculation, but there was absolutely no evidence. And that's the kind of context where it would be really helpful to have an expert declaration telling us. People in this art would have interpreted that as being just a shot in the dark. Or people of skill in this art would not really have found that to suggest an expectation of success because of some other factors. In our case here, at some point in the prosecution, the examiner had rejected the claims and the applicants came back with the declaration which was discussed, but which isn't really part of the appeal anymore. But those kinds of expert declarations can help them resolve those questions. I had one other question that's sort of off the point, but it's something I want to get your take on. I noticed that in this claim, there's a reference to an effective amount of an antibody without any suggestion as to what is an effective amount. Do you think there's an indefiniteness problem there? I know that effective amount shows up in a fair number of claims. Sometimes there seems to be a problem and sometimes there's not. In this case, we have some guidance from the specification on what effective amount means. And it may be that both the examiner and the applicant were relying on that kind of idea. At page 839, the specification explains that an effective amount of autoimmune inhibitor is that amount which is effective upon administration to bind to, neutralize, or inhibit the autoimmune agent. It's some amount that's going to bind to, neutralize, or inhibit. But that's just saying an effective amount is an amount that will have a chemical effect, right? In this case, the bind to, that really is broad. If you expect... Because that's how antibodies work. ...and said, what does it mean? Well, we expect the antibody to bind to. It's certainly not, I would not agree that the claim requires any cure. It doesn't say that at all. And the standard in judging the expectation of success should not be whether a cure is required, because it doesn't say that. The method of treating... I mean, you might want to treat it. Is it enabled if it turns out the treatment is totally ineffective? I mean, I guess by definition they're saying an effective amount, so they're assuming effectiveness. It just sounds like there's a lot of lack of specificity there. And maybe it's permissible. It's very general terms, I agree. Looking at the specification, it isn't much more specific. It just says bind, neutralize, or inhibit. Well, the expectation here, given the teachings of Novick in particular, to develop something that's going to inhibit, even if you're not sure that's what's expected. Although Novick was using a receptor and not an antibody, but it's the same concept. The problem, of course, is that patent applications are drafted well before, normally, well before there are clinical trials to determine precisely the effective dose. So that's why effective amount is accepted. Yes, and there's some flexibility there. You don't want to require an endpoint. You don't want to ask for a clinical endpoint at this stage. I can understand that. Okay, thank you. Thank you, Mr. Walsh. Mr. Marshall has a few minutes. I know you may have a question that I didn't get around to, but I do want to point out a few things that just came up. One of the questions is about what is an effective amount, and of course, where you really find this review of that is in the example, not so much in the claim. I didn't want to take up your time with that. You don't have to get into that. But it's clear that it was ten interdermal injections of the specific type of antibody over a short period of time, and that the lesions cleared up. No, I'm satisfied. That's great. But along that same line, if we need to talk about a reference that says something but clearly does not enable it, that's what Novick is. Novick makes broad statements about possible uses of antibodies to gamma-beta-feron, but there is not a single instance in Novick showing a treatment of any autoimmune disease, whether it's in a mouse or a human, by administering an antibody to gamma-beta-feron. It simply does not. And it does not have presumption of enablement that a U.S. patent has, because Novick is not that. It's simply a published European patent application. So it is exactly what you described it as. It's a shot in the dark saying this is something that may be true, but there is no evidence within Novick to say that it is true. I should say more about Levinson, I think, because that is really the final hook that the patent office comes back to. And what they're saying is in the population of helper cells, the one cell population, the silent population that produces gamma-beta-feron, happens also to have in it Crohn's disease, one of the two inflammatory bowel diseases. Not necessarily the other inflammatory bowel disease, but at least the Crohn's disease. So from that limited amount of additional information, do you really get a confidence that if Queen said some but not all, and we don't have a criteria for determining which ones of the immune diseases are treatable, does that limited information give you any confidence that a particular one like psoriasis is treatable with an antibody to gamma-beta-feron? And what I'm saying is you don't get to that conclusion through the eyes of a person of ordinary skill. You get to that conclusion through the eyes of an examiner taking the claim, using the words of the claim as the road map, and selecting only those portions of the references that will support a determination of obviousness and then hiding behind the substantial level of the standard of review. And it's simply not right to allow that. Thank you, Mr. Marshall. Case will be taken under revisal.